and we'll turn to Weston Capital Advisors versus P.T. Bank-Muttiara et al. Hold on one second, Mr. Kriegsman, we have a transfer of populations here. Okay, let's proceed, Mr. Kriegsman. Good morning, Your Honors. May it please the Court, Alex Kriegsman on behalf of the petitioner appellant. Arguments are set forth in the briefs, Your Honor, but what I'd like to focus on is the on a closed case and asked for an injunction in joining not only petitioner appellant, but non-parties from prosecuting an action in the Delaware Chancery Court and taking any other actions, very broad order. Well, the federal rules contemplate that injunctions apply to other parties as well. I'd like to address that in a moment, Your Honor, because I think as we set forth in the brief, this order violated the Anti-Injunction Act. But this order was entered after an application was made for a brief extension of time and showing that there was no prejudice. The other side didn't claim that there was any prejudice. The court refused to grant an extension. As long as you agreed not to proceed for the period of the extension in the Delaware Chancery Court, right? That's correct, Your Honor. A week. What was the problem with that? Well, that was essentially the same relief that they were asking for in the application. And so we were being told, you're not going to get an extension of time unless you go ahead and agree to everything they're asking for in the application. And we had put forth in the letter and the other side put in a response not disputing it that the parties hadn't even been served and nothing was going to happen in that Delaware Chancery Court action. Nonetheless, refused to grant the extension of time, entered an order that very clearly violates federal rules of civil procedure 52, which says that in order to grant an injunction, you have to have findings of fact and conclusions of law. There's an order that is just a handwritten signature on what the respondent appellee submitted. They acknowledge in their brief that there's no finding of facts or conclusion of law in that order and claim that there were statements made on the record. But if you look at the transcript, really from the judge, frankly, were just sort of gratuitous comments about why we were seeking an extension and it was some sort of trick. But no finding of facts or conclusion of law, and this should be reversed for that reason alone. Wasn't Judge Crotty fully familiar with the history of this litigation, though? Yes. Don't we consider that? Well, that, I mean, you can consider that for a lot of things, Your Honor, but the fact of the matter is federal rule 52 says very clearly when you're entering an injunction, you have to have finding of facts and conclusion of law. It doesn't make an exception for the fact. Is that true under the All Writs Act, though? I don't think the All Writs Act changes, and I think we've addressed that in the papers. I don't think the All Writs Act under these circumstances allows an order without finding of facts or conclusion of law. There's also under the Anti-Injunction Act 22 U.S.C. 2283, because remember this is enjoining a state court action which is prohibited unless it meets certain exceptions, and there's a couple that are addressed in the papers. One is the issue of relitigating something, but that's not what happened here. What about in aid of jurisdiction, though? All of this had happened in the district court, and all of a sudden there's a state proceeding in Delaware. Why isn't that under that exception? Because if you look at that exception, we addressed this in the papers, it still turns to the issue of whether you're relitigating something, and this was a separate issue. The ownership and control of Western Capital Advisors, which is what is the subject of the injunction, is not what had been addressed in the prior revesting order in the district court. There was no objection to the injunction in the district court, didn't you? When the motion was made, your response was what? Our response was to make an application for an extension so that we could file a response, and that was denied. And then what happened? And then you filed nothing. We appeared and objected on the record, but we . . . To the lack of an extension? Yes. You never told the district court that you opposed it on the grounds that you're now arguing to us, right? We weren't given that opportunity, Judge. You weren't given the opportunity on the schedule you wanted, but that's not the standard. Well . . . Not having secured the extension, you were expected to be prepared to respond. This . . . This does have a history, and the history is of successive contempt orders of increasing severity against your client. Then there's the initiation of the Delaware action. They move to and join it. You want an adjournment. The district court doesn't give it to you, and then you file no objections to it. Isn't that the record? Everything Your Honor said is true. So, why should we hear you now? Because what's also in the record is that this was . . . It's clearly unreasonable when a new counsel comes in, in a multi-district case that was closed. It was years old. It's clear from the record this is a complicated proceeding with a history in multiple jurisdictions. The district court was allowed to consider that however sympathetic one would be to an attorney put in that position, that the client was basically engaged in various techniques to evade the judgment of the district court, the latest of which was getting a new attorney who wasn't prepared to respond. That's why the judge made the comment he made about the attorney switch. But Judge, this was a closed case that they filed this application. It wasn't even reopened. That's one of the points, I'm not going to get to everything here, but the case wasn't even reopened. The reason it came before the district judge again was because your client was perceived in the views of your adversaries to have tried an end run around the district court judgment by going to another court. That may be true, but that doesn't change the fact that there was a showing in the district court, it's on the record and it's not disputed, that there was no prejudice by giving a very brief extension of time to have an opportunity to respond to the substance of the merits. A letter came in saying there's a three-week extension, there's no prejudice because nothing's going to happen in Delaware. There's a response. This is all on the record. There's a response from the respondent, APLE, which does not dispute that there's no prejudice whatsoever. And not only is there no extension, but we're being told you can only have the extension if you agree to give them what's essentially the ultimate relief that they're seeking. And so I appreciate everything that your Honor is saying, but in terms of the review of the district court's decision, the reason that there wasn't a substantive response filed was because there wasn't a reasonable opportunity to do so. And again, there was no prejudice from the other side. So . . . Why couldn't Mr. Harris appear? He filed a Delaware action. He could have been an admitted pro-act. He was fully familiar with the whole situation, right? Well, a couple things, and I don't know if this is in the record, but I'll answer your Honor's question. I don't know that Mr. Harris was familiar with all of the history of the Southern District action, which he was not representing the petitioner appellant at that time, and there were different issues that were litigated in this closed case in the Southern District of New York than what was filed in the Delaware action to determine ownership and control of the Western entities. Many of the things, and this is in the record, are . . . I see five pages in the petition in Delaware that describes what happened in the Southern District. I mean, there's a difference between having been in the case and being fully familiar with the issues that came up in the Southern District action versus providing a summary to the Delaware court. Isn't it somewhat disingenuous to think that being aware of the Southern District action, as the pleadings make plain counsel was, that you would be naive to think that you initiate this Delaware action. Your adversary is not going to be in the New York District court rather quickly. Sure. So, you know, you wouldn't bring the Delaware action without informing yourself of whatever you needed to for the anticipated defensive action that you would anticipate in New York. There's a difference, respectfully, Your Honor, between rather quickly and filing an order to show cause in a closed case without even reopening it and then seeking a substantive response before there's any opportunity for counsel to respond. They didn't even have counsel in New York when that was filed. I see I'm out of time. I'll rely on what's in our papers on the remaining points. Thank you, Your Honors. Thank you. Good morning. Daniel Kaufman from Quinn Emanuel, Urquhart & Sullivan on behalf of Banquet Tiara. May it please the court. This court should affirm because the district court had the discretion to enjoin these recalcitrant contenders from violating prior orders that this court affirmed. Banquet Tiara owns Weston. That's the relief we sought from the district court. That's what the district court ordered. That's what this court affirmed. But following that affirmance, Weston's former management commenced an action in Delaware to retake control of the entities and have the revesting orders declared a nullity. It was not an abuse of discretion to enjoin this latest vexatious litigation tactic because it was an attack on the revesting orders, it was an attack on this court's affirmance, and it was an attack on the district court's and this court's repeated efforts to compel compliance and compensate Banquet Tiara. That conclusion is not changed by the fact that the act that wasn't joined was the prosecution of a state court action. The Anti-Injunction Act does not prevent district courts from issuing orders necessary to protect or effectuate its judgments or in aid of its jurisdiction. And the injunction here fits easily within both of those exceptions. Judge Radji, you recited the procedural history here, but there was a key event that you left out, which was that the district court conveyed the equity interest in all of these entities to Banquet Tiara. And the reason it did that was to put a stop to this endless global litigation and harassment campaign that Mr. Legee and Wesson's former management have waged against Banquet Tiara for the better part of the last decade, and this court affirmed. All that's going on here is more of the same from Wesson's former management. Mr. Legee bought these entities for a dollar. He got a huge payday almost six years ago, and he's been searching for another one of those paydays and initiating these baseless actions against Banquet Tiara in the hope that Banquet Tiara will relent and effectively will pay him to go away. But that's not going to happen because the district court put a stop to that with the revesting orders, and this court affirmed. All that was sought with the injunction was to give effect to the revesting orders and not permit Wesson's former management to do an end run around them. Effectively what they've done is they've sought to appeal this court's affirmance of the revesting orders to the Chancery Court in Delaware, and they don't get to do that. That's not permissible. And so all we sought, all the district court did, and all we asked this court to affirm, is to not permit them to prosecute the same issue, to litigate the same issue in Delaware or anywhere else. Can I just ask you what's the status of litigation in Mauritius? So in Mauritius, Judge Roney, there are proceedings underway to give effect to the revesting orders. Those proceedings are underway. We're confident that the courts in Mauritius will recognize the revesting orders and put a stop to the litigation there. I thought there were some orders that entered against your client, though, fairly recently. Is that true? So it's true and it's not true, and I'll explain what I mean by that. And the chronology here is important. So prior to the final revesting order, the district court entered an order in joining the Weston entities, then still owned by Mr. Legee, to bring the share certificates to the southern district. And the date that Weston was required to do that was March 20th of 2017. On that very day, Weston ran into the courts in Mauritius and filed this notice of attachment. They then argued that that notice of attachment made the revesting orders a nullity. This court rejected that when it affirmed the revesting orders. What was attached in Mauritius? Well, it's not totally clear, but what Weston's former management has argued is that it attached the equity interests and all of the other assets that were the subject of the revesting orders. Now, as I said, that argument was rejected. This court affirmed on June 25th of last year. And on June 28th, three days later, they went back to the court in Mauritius and said, Remember that notice of attachment that we filed? Court, can you act on that? And that's what led to this order that they now rely on as this kind of fig leaf for defying the district court's and this court's orders. They're relying on an order of the court in Mauritius. That's right, Judge. And what did that order say? The order is in the form of a garnishment. It's not totally clear. The concepts, what the order says, it's in the record, in the appellant's appendix at 103, or pardon me, 101 to 102. It effectively garnishes the entities themselves. But the pertinent point is that it is another example of this kind of slippery approach to litigating this case, which is to every time this court puts an end to this conduct, then they come up with some new way to continue to harass Bangu Tiara. It's this sort of whack-a-mole approach to litigation that the revesting orders were designed to stop. And that this court, in affirming the revesting orders, should have led to the stop of that conduct. And they've tried it in Delaware. Judge Crotty appropriately enjoined that. This court should affirm that. They're trying it in Mauritius. There are proceedings underway to put a stop to it in Mauritius. I see. Mauritius is the Supreme Court of Mauritius. Is it the highest court of Mauritius? No.  I think that's right, Judge. New York County. It's the commercial division of the Supreme Court. It's not the highest level. Exactly, Judge. It's modeled, no doubt, on New York County. Perhaps. Perhaps, Judge. Have you challenged that? Are you actively challenging what the Mauritius Supreme Court has issued? Yes, Judge. So there are proceedings underway effectively to sort of replace the counsel that Wesson's former management had hired in Mauritius. And there are proceedings to have the revesting orders. I believe it's an exequator action, which, as I understand it, is designed to give enforcement to the orders coming from this court. And we expect that, in due course, the courts in Mauritius will give recognition to this court's orders and put a stop to this conduct. Have you appeared before Supreme Mauritius? I have not, Judge. I hope to soon. It's going to be a long trip. It is a long trip, yes. So unless there are any further questions, we'll rest on our briefs. Thank you. Mr. Kriegsman, you did not reserve any time, but I'll give you 30 seconds if you want to deal with these large questions. If the panel has any questions, I'm happy to answer. Otherwise, we'll rest on our papers. Thanks very much. We reserve the decision.